UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHARLES WAYNE SHANAHAN,  )<br>Plaintiff,  )<br>  )<br>-vs-  )<br>  )<br>ANDREW M. SAUL,  )<br>Commissioner of Social Security;  )<br>Defendant.  )<br>_____ ) | Civil Action No.: 4:20-cv-000927-TER<br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I.  RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for DIB on March 9, 2016, alleging inability to work since January 1, 2015. (Tr. 12). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on November 1, 2018, at which time, a vocational expert (VE) and Plaintiff testified. (Tr. 12). The Administrative Law Judge (ALJ) issued an unfavorable decision on February 25, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-22). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on February 11, 2020, making the ALJ's decision the Commissioner's final decision. Plaintiff filed this action on March 3, 2020. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on June 10, 1957, and was sixty-one years old on the date last insured. (Tr. 21). Plaintiff alleges disability originally due to Crohn's disease and chronic ulcerative proctitis with rectal bleeding. (Tr. 50).   Only relevant records will be summarized under pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of February 25, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 12-22):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2015 through his date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: Crohn's disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 10, 1957 and was 61 years old, which is defined as an individual closely approaching retirement age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in determining the RFC because the ALJ failed to appropriately evaluate Plaintiff's fecal urgency/frequency and incontinence and the RFC failed to explain the lack of Plaintiff's need for quick access to a restroom and to have unscheduled bathroom breaks. Plaintiff also appears to contest the ALJ's treatment of treating specialist Dr. Sheikh's opinion. Plaintiff argues the ALJ erred in the subjective symptom evaluation and the evaluation of fatigue and joint pain. Plaintiff argues the ALJ erred in application of the Grids.

Defendant argues the ALJ supported findings with substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

3

under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the

court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in determining the RFC because the ALJ failed to appropriately evaluate Plaintiff's fecal urgency/frequency and incontinence and the RFC failed to explain the lack of Plaintiff's need for quick access to a restroom and to have unscheduled bathroom breaks.

Recently, in a published case, the Fourth Circuit Court of Appeals remanded on a similar issue:

> Third, the ALJ failed to analyze whether Appellant's RFC was impacted by her **need to work near a restroom and take frequent bathroom breaks**. There is **considerable evidence in the record** demonstrating that Appellant regularly experienced **diarrhea and incontinence, as well as drainage** from her anal fissure. Appellant argues that these problems caused her to require bathroom breaks at a frequent, and often unpredictable, rate. **Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work**. **And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks**. Instead, the ALJ simply noted that Appellant "accommodate[d] her drainage and accidents by using pads." J.A. 16. That finding misses the point. Pads may keep Appellant's clothes clean and help reduce the potential for embarrassing accidents. However, they do not save Appellant any trips to the bathroom, since the pads need to be changed once they are soiled. **On remand, the ALJ should evaluate the frequency at which**

**Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work.**

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021)(emphasis added).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ here found: "Symptoms and limitations arising from claimant's Crohn's disease, including stress or pressure causing <u>a release of fecal matter</u>, or weakness and joint pain have been accounted for in the residual functional capacity limitation to medium[3] exertion." (Tr. 19)(emphasis

---

[3] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." There are no limits on standing, sitting, or walking in medium exertion as there are with light or sedentary exertions. 20 C.F.R. §

7

added). The RFC determination itself was a full range of medium work without any further limitations. (Tr. 17). In line with *Dowling*, the instant ALJ's decision suffers from the same deficiency as the one in *Dowling*. The ALJ failed to analyze whether the RFC was impacted by a need to work near a restroom and take frequent bathroom breaks. "Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021). There is no explanation by the ALJ how the release of fecal matter is accounted for in the full range of medium RFC. There is no reflection as to access or breaks to change undergarments, almost identical to the *Dowling* facts. The ALJ noted twice Plaintiff's reports of handling stress well as long as he has quick access to a bathroom, but there is no provision to access in the RFC determination. (Tr. 16,18).

The record displays the following as to the severity of Plaintiff's disease via objective testing and Plaintiff's bowel symptoms as noted by Plaintiff's treating specialist.

**2015**

On March 9, 2015, Plaintiff was seen by Dr. Patel. Plaintiff had some hemorrhoid pain, rectal pain, mucus with most stools, proctitis, and pain with defecation. Assessment was weight loss, rectal bleeding, and fatigue. (Tr. 390).

In April 2015, biopsies were performed on a rush due to abnormal weight loss. (Tr. 370). Rectum had benign squamous and colonic mucosa with focal ulceration, moderate to marked acute and chronic inflammation, acute cryptitis, and focal paneth cell metaplasia. (Tr. 370). Left colon had focal mild acute and chronic colitis with non-caseating microgranuloma. Plaintiff was in possible active phase of chronic inflammatory bowel disease. (Tr. 370). In May 2015, the results were

---

404.1567(c).

thoroughly discussed with Plaintiff by Dr. Sheikh. (Tr. 436). Dr. Sheikh, a treating specialist/gastroenterologist characterized this as intense inflammation. (Tr. 436).

On June 10, 2015, Plaintiff was seen by Dr. Sheikh. (Tr. 364). Plaintiff had a decrease in bleeding but diarrhea continued. Humira was to be pursued for moderately severe Crohn's colitis. (Tr. 364, 432).

On August 25, 2015, Plaintiff presented to Paradigm Medical Services. Plaintiff had some weakness and fatigue he felt was due to Crohn's. Humira was helping. (Tr. 388).

On November 6, 2015, Plaintiff was seen by Dr. Sheikh of Gastroenterology Specialists. (Tr. 349). Plaintiff was assessed with Crohn's disease. Plaintiff was to wean prednisone and continue Humira. (Tr. 349). Plaintiff's evaluation had originally revealed a mass like lesion in the rectum, active inflammatory bowel disease, and biopsies showing inflammation. Plaintiff had "formed bowel movements with occasional hematochezia." (Tr. 349). Abnormal weight loss, chronic ulcerative proctitis with rectal bleeding were also noted as active problems. (Tr. 350) Impression was Crohn's colitis currently in remission. (Tr. 360, 425-429).

On December 18, 2015, Dr. Sheikh performed a sigmoidoscopy. (Tr. 342). Pre-procedure rectal exam showed a mass like area in the rectal vault. Multiple biopsies were obtained and there was a mass-like area around the perianal area essentially unchanged but very "friable as it was a few months ago." (Tr. 342). Findings were improvement in colitis but rectal mass like area persists. (Tr. 342). Pathology report showed chronic active colitis, moderate to severe activity, severe activity chronic active proctitis, focal ulceration, and epithelioid granuloma formations. (Tr. 343). Plaintiff had acute inflammation and marked expansion of lamina propria, and crypt abscess formation. (Tr. 343, 417).

Despite medication changes, Plaintiff continued to have episodes of liquid stool incontinence and bloody mucus discharge. (Tr. 351-353, 405, 408).

**2016**

On January 4, 2016, Plaintiff was seen by Dr. Sheikh. Physical exam was normal. Impression was complicated Crohn's disease currently on Humira. (Tr. 339). Plaintiff's December biopsy showed chronic active colitis consistent with rectal Crohn's. Stools had improved. Plaintiff continued with some joint pain. (Tr. 356, 413).

On March 10, 2016, Plaintiff was seen by Dr. Sheikh. (Tr. 351). Plaintiff continued to have fatigue and joint pain problems with his history of Crohn's colitis and perianal Crohn's disease. Plaintiff's pain and weight loss had improved with Humira. "However, his perianal disease persists with episodes of liquid stool incontinence and bloody mucus discharge." (Tr. 351, 408).

On June 15, 2016, Plaintiff was seen by Dr. Sheikh. (Tr. 405). Plaintiff felt better but was still fatigued. Plaintiff still had abdominal discomfort and rectal bleeding while on Humira. (Tr. 405). Impression was: "Difficult to control inflammatory bowel disease, we have taken the liberty of adding azathiprine to Humira, obtain a CBC in 2 weeks and a cortisone stimulation test. If he does not see significant improvement over the next 6-12 weeks, we will consider Remicade." (Tr. 407).

On July 1, 2016, Plaintiff was seen by Dr. Sheikh. (Tr. 398). Plaintiff had been diagnosed with Crohn's involving the left colon with perianal disease. "He continues to have tenesmus, blood in the stool with a stable hemoglobin. Urgency and episodes of incontinence despite being on Humira for a year." (Tr. 398). Impression was Crohn's unresponsive to Humira. (Tr. 400). Plaintiff was started on entyvio. (Tr. 400).

On July 5, 2016, Plaintiff was seen by Dr. Patel. Plaintiff had some leakage of stools.

Plaintiff had 2-3 external piles and some internal hemorrhoids. (Tr. 387).

On August 29, 2016, Plaintiff was seen by Dr. Sheikh. Symptoms had improved with infusion. He continues to see intermittent blood in the stool, still some nocturnal episodes of diarrhea, and occasional hematochezia. (Tr. 456). Impression was Crohn's colitis. (Tr. 458).

On October 3, 2016, Plaintiff was seen by Dr. Sheikh. (Tr. 488). Plaintiff reported noticing blood in stool. Plaintiff improved on infusion. (Tr. 488).

On November 30, 2016, Plaintiff was seen by Dr. Patel. Despite having infusions, Plaintiff still had defecation four times a night. (Tr. 467).

On December 16, 2016, Plaintiff was seen by Dr. Sheikh. Plaintiff had significant improvement on infusion. Plaintiff continued with "urgency occasional soft stools." (Tr. 483).

**2017**

On January 6, 2017, Plaintiff was seen by Dr. Sheikh with episode of constipation with some overflow diarrhea. Plaintiff continued to have some constipation and intermittent rectal bleeding. If symptoms persisted Plaintiff would get a sigmoidoscopy. (Tr. 478). A January 2 X-ray showed a large amount of stool throughout the colon. (Tr. 481).

On January 16, 2017, Plaintiff had sigmoidoscopy by Dr. Sheikh. (Tr. 476). In the sigmoid colon, there was no evidence of active inflammatory bowel disease. "This has improved significantly." However, the rectum continued to show chronic active proctitis involving the first two inches of the rectum from the anal verge, circumferential inflammation. This even so looked better than in 2014. (Tr. 476). Findings were chronic active proctitis, Crohn's disease. (Tr. 476). Biopsies showed chronic active colitis with ulceration, moderate to severe inflammatory activity, mucosal granulomas, and granulation tissue. (Tr. 477).

On April 18, 2017, Plaintiff was seen by Dr. Sheikh. Plaintiff was on antibiotics for bronchitis and was given some probiotics at this visit. Crohn's was currently in remission and Plaintiff was tolerating the infusion well. (Tr. 636).

On June 14, 2017, Plaintiff was seen by Dr. Sheikh. Assessment was perianal Crohn's disease with intermittent pain and bleeding. If symptoms persisted, an MRI would be considered. (Tr. 650). It is noted Plaintiff continued with blood in his stool, anal/rectal discomfort, and burning. (Tr. 651). Diagnosis was Crohn's disease of large intestine with rectal bleeding. (Tr. 652).

On June 14, 2017, Plaintiff's treating specialist, Dr. Sheikh opined Plaintiff needed a job which permitted ready access to a restroom. (Tr. 494). Plaintiff needed unscheduled restroom breaks four times a day. Plaintiff would be in the restroom/away from work station 30 minutes to two hours due to unable to recuperate quickly. (Tr. 494). Plaintiff had a less than two minutes urgent advanced notice to that need for a restroom break. (Tr. 494). Plaintiff's symptoms were noted as abdominal pain/cramping, fever, weight loss, appetite loss, bowel obstruction, peripheral arthritis, malaise, fatigue, mucus in stool, ineffective straining at stool, fistulas, anal fissures, and rectal leakage. (Tr. 492).  Dr. Sheikh also wrote in that exertion caused urgency. (Tr. 495).

**2018**

On August 7, 2018, Plaintiff reported blood in his stool to Dr. Patel. (Tr. 710). On August 13, 2018, Plaintiff was seen by Dr. Sheikh. (Tr. 664). Assessment was long standing history of Crohn's colitis with a Crohn's disease activity index of 287. CT and colonoscopy were ordered. (Tr. 664). Plaintiff was doing quite well from a Crohn's standpoint. Plaintiff had upper abdominal discomfort. Plaintiff had 4-6 loose stools a day with no bloody diarrhea. "Prior to his infusions, he was having episodes of bloody diarrhea and episodes of incontinence and was unable to function."

(Tr. 664).

On September 4, 2018, Dr. Patel noted Plaintiff's Crohn disease symptoms continued by way of bowel frequency. (Tr. 709). On October 18, 2018, Plaintiff was seen for cough, but it was noted Plaintiff still had GI reports and had bowel frequency. (Tr. 708).

Based on the foregoing record and applicable published case law, the court can not find that the ALJ's decision was supported by substantial evidence and remand is appropriate. On remand, the ALJ should evaluate the frequency at which Plaintiff needed to use the bathroom and analyze how that restriction impacted the ability to work. As to the ALJ's RFC determination of medium work, the ALJ did not provide an accurate and logical bridge from the evidence to his finding. The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Because the Court finds the ALJ's analysis with respect to the above issues is a sufficient basis to remand the case to the Commissioner, the undersigned does not specifically address Plaintiff's additional allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the Commissioner should consider each of Plaintiff's allegations of error, including, but not limited to: the RFC determination as to urgency, frequency, and fecal incontinence and as to other complaints like fatigue and joint pain, the subjective symptom evaluation as to fatigue and pain, Dr. Sheikh's opinion, and the application of the Grids. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

### III. CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[4]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

---

[4] Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

|  |  |
|---|---|
| May 24, 2021<br>Florence, South Carolina | s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |